```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

LISA ALSDURF,

                Plaintiff,

vs.                                    Case No. 15-1159-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.


                     MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 30, 2013, administrative law judge (ALJ) Christina Young Mein issued her decision (R. at 12-26). Plaintiff alleges that she had been disabled since March 15, 2011 (R. at 12). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since March 15, 2011

4

(R. at 14). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 14). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 17), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 24-25). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 25-26). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III. Did the ALJ err in the weight accorded to the medical opinions?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's

reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still

6

entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Plaintiff argues that the ALJ erred in the relative weight accorded to the opinions of Dr. Coleman, Dr. Patel and Dr. Moore (Doc. 11 at 10-12). On September 6, 2012, Dr. Coleman, a state agency non-examining consultant reviewed the medical records and opined that plaintiff is limited to lifting/carrying 20 pounds, and frequently lifting/carrying 10 pounds. He opined that plaintiff can stand/walk for 6 hours, and sit for 6 hours in an 8 hour workday. He noted that plaintiff also had some postural

limitations (R. at 76-78).  The ALJ accorded significant weight to this opinion (R. at 21).

On December 3, 2012, Dr. Patel, a treating physician, provided a physical RFC assessment, limiting plaintiff to standing/walking for less than 1 hour in an 8 hour workday, and sitting for less than 1 hour in an 8 hour workday (R. at 425-426).  On July 2, 2013, Dr. Moore, another treating physician, also provided a physical RFC assessment, limiting plaintiff to standing/walking for 1 hour in an 8 hour workday, and sitting for 4 hours in an 8 hour workday (R. at 430-431).  The ALJ accorded only minimal weight to these opinions (R. at 22).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even

though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

In the case of Chapo v. Astrue, 682 F.3d 1285, 1292-1293 (10th Cir. 2012), the court found that the medical record obviously underwent material changes in the twenty months between Dr. Amin's report (given great weight by the ALJ) and the ALJ's decision.  Dr. Amin's opinion failed to account for "material objective evidence developed long afterward, (emphasis added)" including x-rays and MRIs.  The court found the ALJ's reliance on the patently stale opinion of Dr. Amin troubling, and because the case was being remanded for other reasons, encouraged the ALJ to obtain an updated exam or report.

Plaintiff argues that the ALJ's reliance on Dr. Coleman's non-examining opinion is problematic because subsequent information rendered the opinion stale (Doc. 11 at 10).  Plaintiff notes that Dr. Coleman suggested plaintiff could perform light work because no lower extremity weakness was noted on examination (Doc. 11 at 11).  Plaintiff points to evidence from Dr. Patel of lower extremity pain, tenderness, and weakness after the report from Dr. Coleman (Doc. 11 at 10-11; R. at 486).  Plaintiff also noted that Dr. Moore had diagnosed regional pain syndrome of the left limb in 2013 (Doc. 11 at 11).

However, the report of Dr. Coleman, in his discussion of low back/left leg pain, after noting no weakness on one exam, mentioned another exam which found midline lumbar pain with tenderness into the left gluteal region and SLR (straight leg raise) weakness/pain with dorsiflexion/plantar flex (R. at 78). Unlike Chapo, there is no clear indication of "material objective evidence" developed after the evaluation by Dr. Coleman. Dr. Coleman was aware of pain, tenderness and weakness/pain in the low back/left leg area when he offered his opinions. Although the ALJ was not aware of the subsequent diagnosis of regional pain syndrome of the left leg, this, of itself, does not demonstrate a material change in the medical condition as opposed to a diagnosis of plaintiff's ongoing condition. The medical evidence does not clearly indicate a material change in plaintiff's medical condition after the report from Dr. Coleman, including material objective evidence that plaintiff's condition had worsened or deteriorated since his report.[1]

---

[1] As noted above, Dr. Coleman's opinions from September 2012 indicate that plaintiff's limitations are not as severe as those subsequently provided by Dr. Patel and Dr. Coleman. On the other hand, the court would also point out that Dr. Patel, on December 3, 2012, had limited plaintiff to only sitting less than 1 hour in an 8 hour day; however, on July 2, 2013, 7 months later, Dr. Moore opined that plaintiff could sit for up to 4 hours in an 8 hour day (R. at 425, 430). Dr. Moore provided a less severe limitation even though the diagnosis of chronic regional pain syndrome of the left limb was not made by Dr. Moore until February 6, 2013 (R. at 533). Dr. Patel had also indicated that plaintiff would need to lie down or recline every 2 hours, however, 7 months later, Dr. Moore opined that plaintiff would only need to lie down or recline 1-2 times a day (R. at 426, 431). On the other hand, Dr. Patel indicated that plaintiff had few postural limitations while Dr. Moore indicated that plaintiff could not perform any postural maneuvers (R. at 426, 431).

10

The ALJ discussed Dr. Patel's examination in November 2012 (less than one week prior to his opinion), which revealed the plaintiff to have normal reflexes, normal sensation, normal strength, and minimal tenderness in the lumbar spine. There was significant tenderness in the left piriformis, but no evidence of atrophy (R. at 22; R. at 484-487). The ALJ further discussed Dr. Moore's contemporary examination dated June 11, 2013, about three weeks before he filled out the RFC opinion. The ALJ stated that Dr. Moore noted that plaintiff had a normal range of motion, normal strength, and normal neurological findings. The only notable finding was diffuse musculoskeletal tenderness without tenosynovitis (R. at 22; R. at 524-528). The ALJ concluded that these opinions are given minimal weight because the contemporaneous progress notes from both sources revealed few positive clinical signs (R. at 22).

These findings by Dr. Patel and Dr. Moore close to the time that they prepared their RFC assessments do not appear, on their face, to be significantly different from the findings summarized by Dr. Coleman in his summary of the evidence and assessment. Dr. Coleman found that the neurologic examination of January 6, 2012 was essentially normal. As noted above, Dr. Coleman pointed out medical evidence of midline lumbar pain with tenderness and weakness and pain. Dr. Coleman also summarized EMG and MRI test results in his report (R. at 77-78). Dr.

11

Coleman, as set forth above, prepared an RFC assessment finding plaintiff with fewer limitations than those of Dr. Patel or Dr. Moore.

The ALJ gave great weight to a report from Dr. Jackson, who evaluated plaintiff and prepared a report on January 4, 2012 (R. at 19). Dr. Jackson examined plaintiff and reviewed MRI reports. His recommendations included the following:

> There is certainly nothing on either the cervical or lumbar MRI that would explain Ms. Alsdurf's left hemibody symptoms. They are certainly quite atypical. It seems that she has been through an exhaustive and appropriate course of management and workup for this.

(R. at 333). The ALJ discussed in some detail the lack of objective evidence or clinical signs that, in her opinion, would support the degree of pain and limitation alleged by the plaintiff (R. at 19-22).

Although the evidence from Dr. Patel and Dr. Moore would support a contrary finding, the court cannot displace the agency's choice between their opinions and the contrasting opinion of Dr. Coleman, even if the court may have justifiably made a different choice had the matter been before it de novo. The ALJ could reasonably rely on Dr. Coleman's summary of the evidence and opinions, the limited clinical signs and findings, and the near normal objective studies in the medical record, to discount the opinions of Dr. Patel and Dr. Moore.

Furthermore, the evidence does not clearly reflect, as in Chapo, material objective evidence that plaintiff's condition had worsened since Dr. Coleman summarized the evidence and prepared his report. The court finds that substantial evidence supports the ALJ's RFC findings and the weight she accorded to medical source opinions.

**IV. Are the ALJ's credibility findings supported by substantial evidence?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need

13

not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

   In finding plaintiff not fully credible, the ALJ relied on the lack of objective evidence and clinical signs that would support her allegations of disabling pain and limitations. The ALJ reasonably relied on Dr. Coleman's summary of the evidence and his opinions regarding plaintiff's limitations. The ALJ pointed out inconsistencies in her testimony (R. at 20-21). The ALJ also noted that plaintiff left her last job so that she could stay home and care for her husband, who is suffering from cancer (R. at 20-21, 308). The ALJ could reasonably rely on all of these factors to discount plaintiff's credibility.

The ALJ also stated that plaintiff's effort at treatment has been sporadic and relatively incomplete. The ALJ further points out that she has not seen a rheumatologist, nor has she been to a pain management clinic (R. at 20). However, in the case of Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ noted that Mr. Hamlin did not require an assistive device for his neck. The court held that there was no evidence that any physician recommended such a device or suggested that one would have provided any pain relief. An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.

In the case before the court, the ALJ has failed to point to any medical evidence that a physician recommended that she see a rheumatologist or go to a pain clinic. In fact, Dr. Glawe indicated on May 14, 2013 that she did not feel that plaintiff is to see pain management at this point as she is not taking much in the form of narcotics and has been through multiple interventions, none of which she is interested in at this point (R. at 518). Dr. Allen pointed out that plaintiff had tried physical therapy, massage, and chiropractic treatment, and had tried various blocking agents through a neurologist (R. at 358). The record does not demonstrate that plaintiff's efforts at treatment has been sporadic and incomplete.

However, the court will not reweigh the evidence. Although the court has some concerns about the ALJ's discussion of sporadic and relatively incomplete treatment, including not seeking treatment from certain professionals, the court finds that the balance of the ALJ's summary and evaluation of the evidence and her credibility findings are supported by substantial evidence in the record. Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record").

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 3rd day of August 2016, Topeka, Kansas.


                                s/Sam A. Crow
                                Sam A. Crow, U.S. District Senior Judge

16